**Stephen GRAHAM, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 90–0091 P.

United States District Court, D. Maine.

Dec. 19, 1990.

---

**995**

Walter Oleniewski, Ashley Joel Gardner, Rockville, Md., Paul F. Zendzian, Portland, Me., for plaintiffs.

David R. Collins, Asst. U.S. Atty., Portland, Me., for defendant.

GENE CARTER, Chief Judge.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

In this action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671

*et seq.*, Plaintiff Uriah Graham, a minor, seeks relief for prenatal injuries she allegedly suffered because of medical malpractice by Air Force personnel at the time of her delivery. Her parents, Stephen Graham, a civilian, and Patricia, an enlisted person on active duty in the United States Navy, seek relief for the injuries caused them by having an injured child. Defendant has moved to dismiss the claims of all parties on the grounds that they are barred by the *Feres* doctrine. *See Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

Patricia Graham was admitted to the Pease Air Force Base Hospital on November 25, 1987, in active labor. Plaintiffs specifically allege that their injuries were caused by the attending military physicians' failure to recognize and respond to danger signs during the labor, their undertaking of an inappropriate forceps delivery, and their failure to perform a timely Caesarian section. The infant Plaintiff alleges that the Defendant's agents' malpractice caused her permanent brain damage and cerebral palsy. Her parents allege that they have suffered both the trauma of having a brain-damaged child and the loss of filial companionship as well as the financial burdens of providing care for their daughter.

In *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950), the Supreme Court held that the government is not liable under the FTCA for injuries to servicemen when the injuries arise out of or are incident to service. The *Feres* case dealt, in part, with claims of medical malpractice brought by military personnel or their survivors against military medical personnel. The Court has recently reaffirmed the doctrine, reiterating the three factors underlying it: the "distinctively federal" relationship between the government and its Armed Forces; the existence of the Veterans' Benefits Act as a substitute for tort liability; and the effects of the maintenance of such suits on military discipline. *United States v. Johnson,*

481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).[1]

In *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Supreme Court extended the *Feres* doctrine to bar suits brought by third parties against the government seeking indemnification for damages paid to a member of the military injured in the course of military service. Analyzing the case in light of the three factors articulated above, the Court specifically found that "where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is the same whether the suit is brought by the soldier directly or by a third party." *Id.* at 673, 97 S.Ct. at 2059.

Defendant argues that the *Feres* doctrine bars all of plaintiffs' claims because they all arise out of treatment rendered to Patricia Graham due to her status as an active duty member of the armed forces. Plaintiffs, on the other hand, argue that the injuries for which the minor Plaintiff seeks recovery are personal to her, that the Defendant's agents breached an independent duty of care to her as a civilian, and therefore, that the *Feres* bar does not apply. They further argue that because the parents' claims are derivative of Uriah's claims rather than being claims for direct injury to the servicewoman mother that they are not barred by *Feres*.

There is no doubt that the *Feres* doctrine bars medical malpractice claims brought by active duty servicepersons or their representatives for injuries sustained at the hands of military medical personnel. *See e.g., Feres*, 340 U.S. at 137, 71 S.Ct. at 155; *Hamilton v. United States*, 719 F.2d 1 (1st

Cir.1983). The Court notes, however, that when civilian dependents of service members directly receive negligent medical treatment from military personnel, the *Feres* doctrine has not been applied in this circuit or others to bar the claims. *See e.g., Williams v. United States*, 435 F.2d 804 (1st Cir.1970) (serviceman's child denied treatment at military hospital); *Reilly v. United States*, 665 F.Supp. 976 (D.R.I. 1987), *aff'd in part and rev'd in part*, 863 F.2d 149 (1st Cir.1988) (serviceman's child recovers for prenatal injuries suffered in military hospital);[2] *Grigalauskas v. United States*, 103 F.Supp. 543, 550 (D.Mass. 1951), aff'd, 195 F.2d 494 (1st Cir.1952) (serviceman's child sues for post-delivery injuries at military hospital); *Burgess v. United States*, 744 F.2d 771 (11th Cir.1984) (serviceman's child received post-delivery injuries at military hospital).

In other cases in which dependents have sued, courts have barred recovery when the injury to the dependent is so related to an injury to the serviceperson parent or spouse that the dependent's injury can be said to derive from or have its genesis in that injury. For example, in this circuit *Feres* barred, as incident to service, a wife's and child's wrongful death claim as well as a claim for the wife's own mental anguish at witnessing the inadequate medical care given to her serviceman husband by army physicians. *De Font v. United States*, 453 F.2d 1239 (1st Cir.1972).[3] Similarly, a number of courts have barred children's claims for genetic injuries caused by the serviceperson parent's exposure to radiation. *See, e.g., Mondelli v. United States*, 711 F.2d 567 (3rd Cir.1983); *Lombard v. United States*, 690 F.2d 215 (D.C.Cir.1982); *Monaco v. United States*, 661 F.2d 129 (9th

---

**1.** The *Feres* doctrine has been widely criticized, *see, e.g., United States v. Johnson*, 481 U.S. at 692, 107 S.Ct. at 2069 (Scalia, J., dissenting); *Hinkie v. United States*, 715 F.2d 96, 97 (3rd Cir.1983); *Scales v. United States*, 685 F.2d 970, 974 (5th Cir.1982), and its application produces a legal landscape rife with inconsistencies. *See, e.g., United States v. Johnson*, 481 U.S. at 692, 107 S.Ct. at 2069 (Scalia, J. dissenting). It is, however, the law, and this Court is bound to follow it. *See Morey v. United States*, 903 F.2d 880, 883 (1st Cir.1990).

**2.** In neither *Reilly* nor *Williams* was *Feres* expressly discussed in regard to the child's claim. The claims were allowed to be brought, however, and it is clear, at least in *Reilly* that the government knew of *Feres* since it tried to apply it to bar the claims of the serviceman father.

**3.** The very brief opinion in *De Font* was written almost twenty years ago, before the Supreme Court's discussions of *Feres* in *Stencel* and *Johnson*. The opinion did not focus on how the individual *Feres* factors affected the claims brought there.

Cir.1981). Under another manifestation of the genesis theory, the Court of Appeals for the Fifth Circuit dismissed the claim of a child injured *in utero* by a rubella vaccination administered to his mother during pregnancy. *Scales v. United States,* 685 F.2d 970 (5th Cir.1982). The court in *Scales* distinguished cases in which recovery for dependents has been allowed, stating:

> In cases that allow the dependents of servicemen to sue the government, the negligent conduct is directed to the dependent alone and does not involve any decisions by the military toward enlisted personnel. Charles' allegations of negligence by contrast focus entirely on the medical treatment that Air Force physicians gave his mother. The treatment accorded his mother is inherently inseparable from the treatment accorded Charles as a fetus in his mother's body. Consequently, the district court's analysis is the same whether the suit is brought by Charles or Ms. Scales. In either instance, the judge is placed in the position of questioning the propriety of decisions or conduct of fellow members of the Armed Forces. This is precisely the type of examination that *Feres* seeks to avoid.

*Id.* at 974.

Like *Scales,* which relies only on the military discipline rationale of *Stencel,* many of the cases barring a dependent's claim because of its genesis in a serviceperson's injury have not fully analyzed the Plaintiff's claims in light of the *Feres* factors. *See, e.g., Mondelli v. United States,* 711 F.2d 567, 569 (3rd Cir.1983); *Lombard v. United States,* 690 F.2d at 224; *In re "Agent Orange" Product Liability Litigation,* 506 F.Supp. 762, 774 (E.D.N.Y.1980) (Pratt, J.), *modified* 580 F.Supp. 1242, 1250 (1984) (Weinstein, J., finding that all *Feres* factors must be considered). Although the Supreme Court had indicated that the other *Feres* rationales were "no longer controlling," *United States v. Shearer,* 473 U.S. 52, 58 n. 4, 105 S.Ct. 3039, 3043 n. 4, 87 L.Ed.2d 38 (1985), in both *Stencel* and *Johnson,* its most recent affirmation of the doctrine, the Court

indicated that availability of the doctrine as a bar was to be determined only after a consideration of all three factors. In *Stencel,* in addition to finding that military discipline was equally undermined by third party suits as by those brought directly by the injured serviceperson, the Court found that the "relationship between the Government and its suppliers of ordnance [of whom Plaintiff was one] is certainly no less 'distinctively federal in character' than the relationship between the Government and its soldiers." *Stencel,* 431 U.S. at 672, 97 S.Ct. at 2058. The Court went on to hold Plaintiff's action barred because "[t]he *factors* considered by the *Feres* court are *largely* applicable in this type of case as well." *Id.* at 674, 97 S.Ct. at 2059. (emphasis added).

Although the case presented by the minor Plaintiff here is similar in many respects to *Scales* and the genetic injury cases, the Court cannot mechanically accept their results, since they have not focused on the applicability of all the *Feres* rationales. *See Atkinson v. United States,* 825 F.2d 202 (9th Cir.1987) (withdrawing its previous opinion which had allowed a servicewoman's malpractice action against military personnel because the decision was based only on a finding that military discipline would not be implicated by the suit). The Court must analyze all three factors to determine if the doctrine should be applied to bar Plaintiffs' claims here.

Initially, the Court notes that while prenatal care was administered jointly to the minor Plaintiff and her servicewoman mother, the minor Plaintiff is suing for a direct injury to her during the course of that treatment. Since Uriah suffered the injury, it is her relationship to the government which must be examined. *See In re "Agent Orange",* 580 F.Supp. at 1248. It is clear that the minor Plaintiff here is a civilian. Unlike an active duty serviceperson or a supplier of ordnance, she has no "distinctively federal" relationship with the government. *Del Rio v. United States,* 833 F.2d 282, 287 (11th Cir.1987); *In re "Agent Orange" Product Liability Litigation,* 580 F.Supp. 1242, 1254 (E.D.N.Y.

1984); *Grigalauskas v. United States,* 103 F.Supp. at 549. The reason for considering whether there exists a distinctively federal relationship between Plaintiff and the government, according to the Supreme Court's explanation of *Feres* in *Stencel,* 431 U.S. at 672, 97 S.Ct. at 2058, is that given such a relationship, it makes no sense to have the serviceman's recovery depend, as it would under the FTCA, on the fortuity of the state of the injury. Although dependents may receive some military privileges or be subject to some military rules, they are not on duty or serving the government. Because no such control relationship with the government exists, there is no real need for uniformity in the treatment of dependents' claims and no reason that their right to sue should derive from the serviceman's status. *See Grigalauskas,* 103 F.Supp. at 549. Indeed, it makes more sense for dependents' claims to be treated in the same manner as those of other individuals who are not on duty or serving the government. The absence of a distinctively federal relationship between Plaintiff and the government, therefore, weighs in favor of allowing Plaintiff's claim.

Turning to the second *Feres* rationale, the availability of compensation under the Veterans' Benefits Act, the Court notes the Supreme Court's more recent explanation, as stated in *Stencel:* "A compensation scheme such as the Veterans' Benefits Act serves a dual purpose: it not only provides a swift, efficient remedy for the injured serviceman, but it also clothes the Government in the 'protective mantle of the Act's limitation-of-liability provisions.'" *Stencel,* 431 U.S. at 673, 97 S.Ct. at 2058. Nothing before the Court indicates that the minor

Plaintiff here has any possible means of compensation from the Veterans' Benefits Act for her injuries.[4] Moreover, the situation here stands in sharp contrast to that presented in *Stencel,* where indemnification of the third-party Plaintiff would in fact circumvent the limitation of liability for the Government as to service-connected injuries by in essence allowing a double recovery to an injured serviceperson out of government coffers. Here, since the minor Plaintiff cannot be compensated by the Act, permitting the minor Plaintiff's claim would not circumvent the limitations imposed by the Act. *In re "Agent Orange",* 580 F.Supp. at 1250. Thus, the absence of any remedy for Plaintiff under the Veterans' Benefits Act militates against barring her claim.[5]

The final *Feres* factor for consideration is the effect a suit by the minor Plaintiff might have on military discipline. As previously noted, the Supreme Court in *Stencel* determined that where the case concerns injury sustained by a soldier on active duty, military discipline is affected equally whether suit is brought by the soldier or by a third party. The Supreme Court explained:

> The litigation would take virtually the identical form in either case, and at issue would be the degree of fault, if any, on the part of the Government's agents and the effect upon the serviceman's safety. The trial would, in either case, involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions.

*Stencel,* 431 U.S. at 673, 97 S.Ct. at 2059. It is plain that this explanation applies to

---

**4.** The Court notes that although the Court of Appeals for the First Circuit did not explicitly consider the *Feres* factors in *De Font,* if they were examined, the possibility of compensation for the widow under the Veterans' Benefits Act, 38 U.S.C. § 341, would militate against enlarging the government's liability, as would the military discipline rationale.

**5.** In *Monaco v. United States,* 661 F.2d 129, 134 (9th Cir.1981), a civilian Plaintiff sought recovery from the government for a birth defect allegedly caused by genetic damage inflicted upon her father while he was in the military.

The court there simplistically applied *Stencel,* stating broadly that "the [Supreme] Court ... rejected the argument that non-military claimants should be entitled to recovery because of their inability to collect compensation under the Veterans' Benefit Act." Although noting the difference between Plaintiff's claim for her own injury and the claim presented in *Stencel* for indemnification for damages paid to a serviceman, the court in *Monaco* failed to see the relevance of this difference for the second *Feres* rationale.

the case at hand. The contours of this suit are identical in many respects to one which Plaintiff's servicewoman mother might have brought had she been injured. While the inquiry might be the same, it seems plain that the actual effect of Plaintiff's suit on military discipline is more attenuated than that discussed in *Stencel.* The minor Plaintiff here was never in the military, and while military activity allegedly caused her injury and could have caused injury to her mother, it is the injury to her and not one to a serviceperson which is at issue. In this situation, there is less disruption of "[t]he peculiar and special relationship of the soldier to his superiors," *see United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), than there would be if the serviceperson were bringing the suit. Moreover, the *esprit de corps* and loyalty to one's service and country that are essential to military discipline, *United States v. Johnson,* 481 U.S. at 691, 107 S.Ct. at 2069, are less affected when a suit alleging military negligence is brought by a civilian child. *Del Rio v. United States,* 833 F.2d 282, 287 (11th Cir.1987).[6]

It is plain that if Plaintiff's mother had been physically injured by the course of treatment which allegedly injured Plaintiff, her claim for prenatal medical malpractice would be barred. *See Irvin v. United States,* 845 F.2d 126, 130 (6th Cir.1988); *Del Rio v. United States,* 833 F.2d at 286 (11th Cir.1987); *Atkinson v. United States,*

825 F.2d at 205–06 (9th Cir.1987). The courts in both *Irvin* and *Del Rio* also addressed claims by minor Plaintiffs allegedly injured by the same prenatal malpractice underlying the mothers' claims. In *Irvin* the court found the minor Plaintiff's action barred by the *Feres* doctrine, while the *Del Rio* court allowed the claims. Although it recited the three *Feres* factors, as affirmed in *Johnson,* and stated that it had Supreme Court precedent in mind, the *Irvin* court did not analyze the child's claims before it in light of all the *Feres* rationales. Rather, it based its decision on the genesis test, particularly adopting the military discipline rationale for that test as articulated in *Monaco,* 661 F.2d at 134, and *Scales,* 685 F.2d at 974, finding it grounded in *Stencel,* 431 U.S. at 672–73, 97 S.Ct. at 2058–59. *Irvin v. United States,* 845 F.2d at 130–31. The *Irvin* court concluded that the genesis test, which in effect extends the *Feres* bar to dependents' independent claims for injuries related to service-connected injuries, "is consistent with ... the Supreme Court's recent embarkment on a course dedicated to the broadening of the *Feres* doctrine." *Irvin,* 845 F.2d at 131.[7]

In *Del Rio v. United States,* 833 F.2d 282, the Court of Appeals for the Eleventh Circuit allowed the claims of children alleging injuries sustained as a result of negligent prenatal care administered by a military hospital to them and their mother, a servicewoman. The court rejected a blanket application of the genesis test, finding

**6.** The Court notes that the Court of Appeals for the Ninth Circuit has found no connection between military discipline and the prenatal care administered to a servicewoman plaintiff by military personnel. *Atkinson v. United States,* 804 F.2d 561, 564–65 (9th Cir.1986), *withdrawn,* 825 F.2d 202 (1987). The Court reasoned that the servicewoman Plaintiff was not subject to the compulsion of military orders when she sought treatment, that there was no command relationship between her and her physician, that no military considerations govern treatment out of the field, and that military discipline does not apply to conscientious medical care. *Atkinson,* 804 F.2d at 565. The Court also found that the case was not one dealing with decisions requiring military expertise or judgment and that the care provided a pregnant woman is not distinctively military.

  Although these might be acceptable criticisms of the application of the military discipline ra-

tionale to medical malpractice cases generally, this Court cannot accept the *Atkinson* court's analysis as drawing a principled distinction between the malpractice case presented to it and the malpractice cases clearly barred by *Feres,* which is still the law. As discussed in the text, the Court does find the military discipline rationale to be more attenuated when the Plaintiff is a civilian child than it was in *Feres,* even as expanded by *Stencel.*

**7.** Although the recent Supreme Court decisions have expanded the reach of the *Feres* doctrine, this Court does not perceive "a course dedicated to the broadening of the doctrine." Rather, with the reaffirmation of the *Feres* rationales in *Johnson,* it seems clear that the Court intends for lower courts to address each case individually in light of these rationales to see if the purposes of the doctrine would be fulfilled by applying it.

that its reliance on the military discipline rationale of *Feres* was not consonant with "[t]he Supreme Court's recent decision in *Johnson* requir[ing] this court to consider all of the policies underlying the *Feres* doctrine." *Del Rio*, 833 F.2d at 287 n. 8. As is clear from the discussion above, this Court agrees with the *Del Rio* mode of analysis. The Court also agrees with the result reached by that court after consideration of all the *Feres* factors.[8] There exists neither a distinctively federal relationship between the minor Plaintiff and the government nor an alternative system of compensation as a reason for barring her claim. Although military discipline will be implicated to an extent by the suit, the degree of the effect is diminished somewhat by the minor Plaintiff's status as a civilian and the distinct injury to her. Since the *Feres* factors are not "largely applicable" in this case, *see Stencel*, 431 U.S. at 673, 97 S.Ct. at 2059, the minor Plaintiff's claim should not be barred.

The Supreme Court recognized in *Feres* that the Federal Tort Claims Act "was not an isolated and spontaneous flash of congressional generosity ... [but] marks the culmination of a long effort to mitigate unjust consequences of sovereign immunity from suit." *Feres*, 340 U.S. at 139, 71 S.Ct. at 156. The minor Plaintiff here is a civilian without any other remedy than a tort suit for injuries allegedly inflicted upon her by military medical personnel. Surely, allowing her suit will serve justice, fulfilling the primary purpose of the Federal Tort Claims Act "to extend a remedy to those who had been without." *Id.* at 140, 71 S.Ct. at 156.

### The Parents' Claim

In Count II Patricia and Stephen Graham bring a claim for the trauma of having a brain-damaged child, for the costs incident to raising her, and for loss of her society and companionship. Defendant has moved to dismiss the claim, separating it into two claims for purposes of analysis. Plaintiff's Opposition to Defendant's Motion to Dismiss states in one sentence in its introduction that "because the parents' cause of action is derivative of physical injury suffered solely by the child, it is not *Feres*-barred." The brief contains one major argument with four subarguments, all addressed to Count I. It does not elaborate on the sentence in the introduction or address Count II in any way. As the Court of Appeals for the First Circuit has recently stated: "It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." *Collins v. Marina–Martinez*, 894 F.2d 474, 481 n. 9 (1st Cir.1990). The Court finds, therefore, that Plaintiffs have waived their opposition to Defendant's motion to dismiss Count II.

Accordingly, it is ORDERED that Defendant's Motion to Dismiss is hereby DENIED as to Count I and GRANTED as to Count II of the Complaint.

SO ORDERED.

---

**8.** The Court does not find persuasive the *Irvin* court's .criticism of *Del Rio*. First, in *Irvin* the court characterized *Del Rio* as "allow[ing] an action for negligent prenatal care to be brought by a surviving infant simply because the infant would have had an independent claim against a civilian physician under state law." *Irvin*, 845 F.2d at 131. Reference to the page cited indicates that the *Del Rio* court there was restating the appellant's argument. Moreover, even a cursory reading of *Del Rio* shows that the court recognized the need to analyze the facts in light of the three *Feres* factors and allowed Plaintiff's claim because "[t]he three factors ... weigh in favor of permitting appellant to maintain the claims against the government on behalf of her injured child." *Del Rio*, 833 F.2d at 287.

The *Irvin* court also criticizes *Del Rio* for its citation of "inapposite" cases which involve independent injuries to the complainant dependents. From their position in the *Del Rio* opinion, this Court suspects that the cases were cited as part of the restatement of appellant's argument. The court's result, which is reached much later in the opinion, derives not from principles set forth in those cases but from its analysis of the facts in light of the *Feres* policies. It is patently clear that the cases are not cited as controlling precedent. In any event, use of such cases, both in *Del Rio* and in this opinion, is appropriate, for they set the parameters for the analysis under *Feres* when contrasted with the description of the genesis test of *Scales*.