*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0349p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TIMOTHY BROWN, individually and as next friend of
MELODY BROWN, his minor daughter,

*Plaintiff-Appellant,*

No. 04-5171

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 03-02282—Jon Phipps McCalla, District Judge.

Argued: March 17, 2005

Decided and Filed: September 8, 2006

Before: DAUGHTREY and CLAY, Circuit Judges; GRAHAM, District Judge.[*]

---

## COUNSEL

**ARGUED:** Jamal K. Alsaffar, THE MICHAEL ARCHULETA LAW FIRM, Austin, Texas, for Appellant. Edward Himmelfarb, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Jamal K. Alsaffar, George J. Hanko, III, Michael E.J. Archuleta, THE MICHAEL ARCHULETA LAW FIRM, Austin, Texas, for Appellant. Robert S. Greenspan, Lowell V. Sturgill, Jr., UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

DAUGHTREY, J., delivered the opinion of the court, in which CLAY, J., joined. GRAHAM, D. J. (pp. 8-11), delivered a separate dissenting opinion.

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

———————————

## OPINION

———————————

MARTHA CRAIG DAUGHTREY, Circuit Judge.  In this appeal, brought by plaintiff Timothy Brown on behalf of his minor child, Melody, we are asked to reinstate the plaintiff's medical malpractice complaint against the United States, filed pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b).  That complaint was dismissed by the district court for lack of subject matter jurisdiction, under *Feres v. United States*, 340 U.S. 135 (1950), as applied to prenatal injuries by this court in *Irvin v. United States*, 845 F.2d 126 (6th Cir. 1988).  Because the facts in this case are readily distinguishable from those in *Irvin* and do not implicate the rationales underlying the decision in *Feres*, we conclude that the district court does have subject matter jurisdiction over the plaintiff's complaint.  We therefore reverse the judgment entered below and remand the case for further proceedings.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Despite the district judge's entry of an order of dismissal under Federal Rule of Civil Procedure 12(b)(6), there can be no doubt that he was fully sympathetic to the Brown family, especially to young Melody, who was born with spina bifida, allegedly as the result of malpractice on the part of a military doctor who provided prenatal care to Melody's mother, Deborah Brown, while Deborah was on active duty with the United States Navy.  In April 2000, in an effort to conceive a child, Deborah had sought pre-conception counseling at her branch medical clinic. Dr. Danjoyeb Mukherjee, a Navy Lieutenant there, prescribed prenatal vitamins to Deborah, and she began taking them in anticipation of achieving a pregnancy.

The vitamins contained folic acid, which the plaintiff alleges is intended solely to prevent neural tube defects in a developing fetus.   Neural tube defects can cause serious spinal cord and brain injury during the first 28 days of gestation, after which the fetal neural tube closes.  Deborah's husband, plaintiff Timothy Brown, later alleged in the complaint that prenatal doses of folic acid offer no scientific benefits to an expectant mother but are prescribed to ensure that there is adequate folic acid for the baby from the moment of conception onward.

In June 2000, some two months after she began taking the prenatal vitamins, Deborah Brown returned to the clinic for a regularly scheduled physical exam.  She indicated on a medical history form that she and her husband were trying to conceive and that she was currently taking prenatal vitamins.   Captain Leland Mills, then the senior medical officer at the clinic, purportedly recommended that she discontinue taking the prenatal vitamins.  In response to this advice, her husband alleged, Deborah stopped taking the vitamins that day.

About four weeks later, Deborah conceived.  After approximately one month of gestation, Deborah returned to the clinic, where she received a new prescription for prenatal vitamins containing folic acid.  According to the complaint, however, the critical time period for taking folic acid had passed, and the fetus that Deborah was carrying had already suffered a neural tube defect from lack of folic acid.  Melody Brown was born on March 28, 2001, and was diagnosed as having spina bifida and its neurological sequelae.  Deborah Brown sustained no physical injury whatever from the effects of the negligent prenatal treatment, from her pregnancy, or from Melody's birth.

Timothy Brown brought this action against the United States on behalf of himself and his infant daughter, alleging that Dr. Mills was negligent in recommending that prenatal vitamins be discontinued and thereby failing to assure that folic acid was available for Melody's benefit from the time of her conception.  In response, the United States filed a motion to dismiss the action for want of subject matter jurisdiction, contending that the *Feres* doctrine had created an applicable

exception to the government's waiver of sovereign immunity in the Federal Tort Claims Act, one that barred Timothy Brown's suit because the injury stemmed from allegedly negligent acts by and against military personnel. The district court granted the government's motion to dismiss, and Timothy Brown now appeals.

## *DISCUSSION*

We emphasize that in resolving the legal question presented by this appeal, we are reviewing only the district court's order of dismissal under Rule 12(b)(1). We must, therefore, treat the allegations in the complaint as true. *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 843 (6th Cir. 2006).

The legal background of this case is well-plowed territory. The Federal Tort Claims Act permits the government to be sued for injuries caused by the negligence of government employees, acting within the scope of their employment, to the same extent that a private individual would be liable for such negligence. *See* 28 U.S.C. § 1346(b). This statutory provision is, nevertheless, subject to a judicially-created exception carved out in *Feres v. United States*, 340 U.S. 135 (1950). In *Feres*, the Supreme Court held that the broad waiver of sovereign immunity found in the Federal Tort Claims Act does not apply to negligence actions brought by military personnel. Specifically, the Court ruled, the government "is not liable under [the Act] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146. The Court has since identified three rationales for the *Feres* exception: *first*, the distinctly federal nature of the relationship between the government and members of its armed forces; *second*, the existence of the Veterans' Benefits Act, which provides a form of no-fault compensation for injured members of the military; and, *third*, the special relationship of a service member to his or her superiors and "the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty."[1] *United States v. Shearer*, 473 U.S. 52, 57 (1985) (citations and internal quotation marks omitted).

After *Feres*, the Court held that the doctrine also precludes suits by *third parties* for claims that derive – directly or indirectly – from injuries to service members incident to military duty. *See Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673 (1977) ("where the case concerns an injury sustained by a soldier while on duty, the effect of the action upon military discipline is identical whether the suit is brought by the soldier directly or by a third party"). *See also Mondelli v. United States*, 711 F.2d 567 (3d Cir. 1983) (child's suit for genetic injuries caused by her father's exposure to radiation during active duty in the military barred because the injury derived from injury to her father); *Lombard v. United States*, 690 F.2d 215 (D.C. Cir. 1982) (same).

Despite the plaintiff's argument that, in contrast to the situations in *Stencel*, *Mondelli*, and *Lombard*, the *Feres* doctrine is inapplicable in this case because Melody's injury was not derivative of any injury to her mother but was, rather, the result of negligence affecting Melody directly (albeit *in utero*), the district court held that it lacked jurisdiction under our ruling in *Irvin v. United States*, 845 F.2d 126 (1988). There we dismissed an action for negligent prenatal care given to a mother enlisted in the Army that allegedly resulted in the death of her child four days after birth. Relying on the Fifth Circuit's analysis in *Scales v. United States*, 685 F.2d 970, 974 (5th Cir. 1982), we held in *Irvin* that the treatment accorded to a pregnant member of the military on active duty is inherently

---

[1] In *Shearer*, the Court held that this third rationale should be considered "controlling" and seemingly undercut the basis for consideration of the first two *Feres* bases. *See* 473 U.S. at 57. However, in a 5-4 decision only two years after *Shearer*, the Court reaffirmed the full three-part analysis in holding that *Feres* applied to injuries suffered by military personnel at the hands of civilian employees of the federal government. *See United States v. Johnson*, 481 U.S. 681 (1987).

inseparable from that accorded to the fetus and that such a claim would therefore force a judge to question the propriety of decisions or conduct of fellow members of the military. *See Irvin*, 845 F.2d at 131. The district court found the Browns' case factually indistinguishable from *Irvin* and, therefore, dismissed the action.

But the district court did so with great reluctance, engaging in the following, highly persuasive, analysis:

> Plaintiffs attempt to distinguish *Irvin* and *Scales* in two ways. First, Plaintiffs argue that the treatment (i.e. the failure to provide prenatal vitamins with folic acid) injured only Melody Brown, rather than her mother. Therefore, Plaintiffs maintain that Melody Brown's injury does not have its genesis in a service member's injury. Second, Plaintiffs argue that prenatal folic acid supplementation should have been provided specifically for the benefit of Melody Brown, a civilian, rather than her mother, an active duty military servicewoman, for whom the folic acid offered no benefit. Therefore, Plaintiffs argue that Melody Brown sustained a direct injury that is independent of the medical treatment her mother received.

> In support of their arguments, Plaintiffs cite to a number of circuit and district courts permitting civilian dependents of military personnel to proceed with claims under the [Federal Tort Claims Act (FTCA)] for negligent prenatal care. *See*, *e.g.*, *Romero v. United States*, 954 F.2d 223 (4th Cir. 1992) (finding that child's claim for prenatal injuries was not *Feres* barred); *Del Rio v. United States*, 833 F.2d 282 (11th Cir. 1987) (finding that children's claim for prenatal injuries was not barred by *Feres* because their claims did not derive from their mother's injury, but were independent); *Lewis v. United States*, 173 F. Supp.2d 52 (D. D.C. 2001) (holding that the *Feres* doctrine did not bar claims for negligent prenatal care where medical treatment was allegedly directed at only the child, rather than the service member); *Graham v. United States*, 753 F. Supp. 994 (D. Me. 1990) (permitting child's suit under the FTCA for prenatal injuries suffered at the time of her delivery); *Utley v. United States*, 624 F. Supp. 641 (S.D. Ind. 1985) (allowing child's FTCA claim for negligent prenatal care).

> In each of the cases cited by Plaintiffs, the court permitted recovery for the child's injuries. Admittedly, none of these cases addressed negligence allegedly occurring early in gestation as the Fifth Circuit did in *Scales*. Indeed, most of Plaintiffs' cases concern negligence at the time of labor and delivery. However, some of the cases are factually similar to the case before this Court in that they allege a negligent injury only to the child, rather than an injury to both the child and the service member. *Romero*, 954 F.2d at 225 ("Joshua, the civilian child, was injured, not a military patient. Admittedly, in satisfying its duty of care to Joshua, proper prenatal treatment would have involved his mother's body. The sole purpose of the treatment, however, would have been directed at Joshua."); *Lewis*, 173 F. Supp.2d at 57 ("Plaintiffs' amended complaint is consistent in its allegations: while both Regina and Clayton received medical care at Walter Reed, only Clayton's medical treatment was negligent."); *Graham*, 753 F. Supp. at 999 ("[I]t is the injury to [the child] and not one to the serviceperson which is at issue."); *Utley*, 624 F. Supp. at 645 ("The only party injured by the alleged malpractice is a civilian infant who has no federal relationship with the government and no remedy if his suit is barred."). Therefore, each of these courts concluded that the child's FTCA claim was not barred by *Feres* because the child had sustained an independent injury at the hands of military personnel. That is precisely the argument Plaintiffs assert here.

Moreover, as noted in many of the cases cited by Plaintiffs, none of the three considerations typically invoked to support application of the *Feres* doctrine seems to apply with particular force in the case of a servicewoman seeking prenatal care in anticipation of or during a pregnancy. In this case, the relationship between the civilian child, Melody Brown, and the government is not distinctly federal in nature. Moreover, the Court has no indication that Melody Brown could recover benefits under the Veteran's Benefits Act for her injuries. Finally, the question of whether a doctor should recommend that an expectant mother take prenatal vitamins with folic acid seems to have little, if any, bearing upon military discipline and would not require judicial scrutiny of the operations of the armed services.

Despite this cogent analysis of relevant case law pointing to a finding of non-immunity based on the facts before the district court, the court came to the conclusion that it was bound by *Irvin* to hold that no recovery was available to Tim Brown on behalf of Melody. Unlike the district court, however, we are not convinced that the end result of this analysis requires slavish adherence to *Irvin*, principally because the facts of the two cases can be distinguished, but also because the *Irvin* opinion's analysis rests on shaky ground, as indicated below, and because its reliance on the then-recent decision by the Fifth Circuit in *Scales* has since been undercut by subsequent decisions in the Fifth Circuit and elsewhere.

The complaint in *Irvin* sought recovery for injury *to the plaintiff mother*, at that time on active duty with the United States Army, that had resulted in the death of her newborn infant, caused by the defendants' malpractice in "prescribing contraindicated medication" and in failing both "to aggressively treat, evaluate and properly diagnose the [resulting] pregnancy condition" and "to reclassify Mildred Irvin's medical condition as urgent." 845 F.2d at 127. In other words, the death of the Irvin infant was caused by (and was therefore derivative of) an injury suffered by the child's mother. By contrast, the facts here indicate that the medical treatment at issue caused no injury to Deborah Brown, as opposed to her fetus. And, although it is true that the *Irvin* opinion relied on the Fifth Circuit's dictum in *Scales* that the claim of a fetus cannot be considered "an independent ground of recovery," 685 F.2d at 973, in a subsequent Fifth Circuit case, *Dickerson v. United States*, 280 F.3d 470 (5th Cir. 2002), the government conceded liability, and the Fifth Circuit permitted a claim to proceed for negligent prenatal care when the care was offered solely for the benefit of the active duty mother's unborn child. Thus, the Fifth Circuit appears to have joined the other courts that have distinguished claims involving injury to a child that derives from an injury to a service-member parent, such as a birth defect caused by a parent's exposure to radiation, *see*, *e.g.*, *Mondelli*, 711 F.2d at 568, from those claims for negligent medical care administered *solely* to the detriment of a civilian child. *See*, *e.g.*, *Romero*, 954 F.2d at 226; *cf. Mossow v. United States*, 987 F.2d 1365, 1369-70 (8th Cir. 1993) (recovery permitted in legal malpractice action against military lawyer who informed an injured child's father that he could not sue for negligent prenatal care provided by the military to his wife, who was on active duty with the Air Force at the time).

Doubtless, we would be obliged by *Irvin* to apply the *Feres* doctrine to bar the plaintiff's claim on his daughter's behalf had the injury to the child been caused by an injury to her mother, who was on active duty with the military at the time of the alleged negligence. However, the injury to the fetus in this case was direct and not derivative. Moreover, as the district court correctly noted, the three rationales underlying the *Feres* doctrine, *i.e.*, the distinctly federal relationship between service members and the military, the administrative compensation scheme available to service members, and the need for military discipline, are simply inapplicable to suits for negligent prenatal care affecting only the health of the fetus.

In *Shearer*, the Supreme Court noted that an action by a member of the armed forces against the government for an injury sustained incident to military service is *Feres*-barred because it is "the type of claim[ ] that, if generally permitted, would involve the judiciary in sensitive military affairs

at the expense of military discipline and effectiveness." *Shearer*, 473 U.S. at 59. But a negligence action for medical malpractice in the prenatal care or birth of a child is a matter that courts can and do handle on a routine basis, and it is one that clearly cannot be said to invite judicial interference in "sensitive military affairs." More to the point is the indication in *Shearer* that courts should take a flexible approach to government claims of immunity in actions brought under the Federal Tort Claims Act. *See id.* at 57 ("The *Feres* doctrine cannot be reduced to a few bright-line rules: each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases."). We thus conclude that the holding in *Irvin*, eroded by the decisions in subsequent cases, should be confined to its facts and does not foreclose a contrary result in a clearly distinguishable set of facts such as the one now before us.

One of the most persuasive of those subsequent cases is *Romero,* in which the Fourth Circuit held that *Feres* did not bar recovery for injuries to the child of active members of the United States Navy who was born with cerebral palsy, alleged to have been caused by inadequate prenatal care by military doctors. The mother, Roxanna Romero, was known to have a condition known as "incompetent cervix," which, when left untreated, resulted in Joshua Romero's premature birth and resulting cerebral palsy. The government argued that if "reasonable medical measures had been undertaken to prevent Joshua's injuries, the treatment [suturing of the cervix until the beginning of labor] would have been directed solely to Joshua's mother" and, therefore, that Joshua's injury was "incident to military service." *Romero*, 954 F.2d at 225. The court rejected this argument – virtually the same contention as the government made here – and, after noting that "claims brought by civilians and civilian dependents of service members who have directly sustained injuries from military personnel are not *Feres*-barred," *id.*, held as follows:

> We believe the precedent governing injuries by the military to civilians applies here. Joshua, the civilian child, was injured, not a military patient. Admittedly, in satisfying its duty of care to Joshua, proper prenatal treatment would have involved his mother's body. The sole purpose of the treatment, however, would have been directed at Joshua.
>
> Mrs. Romero suffered from a congenital cervical weakness. This condition apparently placed Joshua at risk of injury. It did not, however, affect Mrs. Romero's health. Presumably her state of health would have been the same whether the physician placed the sutures or not. If the treatment had been administered, its sole purpose would have been directed at preventing injury to Joshua . . . . Because the purpose of the treatment was to insure the health of a civilian, not a service member, *Feres* does not apply.

We note that the situation in this case directly parallels that in *Romero*, in that the allegedly inadequate treatment produced no injury whatever to Deborah Brown. Indeed, had the proper prenatal care been provided, it would have been solely for the benefit of the fetus and would not have affected the mother's health in any way. We conclude that this set of facts should be governed by cases such as *Romero*, rather than by cases like *Mondelli*, involving derivative genetic injuries to children resulting from a parent's exposure to radioactivity while on military duty. *See Mondelli*, 711 F.2d at 569. The latter clearly "arise[s] out of or [is] in the course of activity incident to service." *Feres*, 340 U.S. at 146. The former just as clearly is not.

Because the underlying rationales supporting the *Feres* doctrine are not applicable in the situation before us, and because the case is readily distinguishable from prior circuit precedent, we decline to adopt the government's contention that we are bound in this matter by our decision in *Irvin*. Instead, we elect to join those circuits holding that the Federal Tort Claims Act does not preclude recovery for negligent prenatal injuries to the child of a military service person that are independent of any injury to the child's parent.

## *CONCLUSION*

For the reasons set out above, we reverse the judgment of the district court and remand the case to the district court for further proceedings.

---

**DISSENT**

---

GRAHAM, District Judge, dissenting.    The majority has decided that the medical malpractice claims asserted against the United States by plaintiff Timothy Brown on behalf of himself and his minor child, Melody Brown, were improperly dismissed by the district court for lack of subject matter jurisdiction.  Because I would conclude that plaintiff's action is barred under *Feres v. United States*, 340 U.S. 135 (1950) and Sixth Circuit precedent, I respectfully dissent.

In *Feres*, the Supreme Court held that the government is not liable under the Federal Torts Claims Act for injuries to military personnel for injuries that "arise out of or are in the course of activity incident to service."  *Feres*, 340 U.S. at 146.  The *Feres* doctrine is not limited to those situations where a service member is injured or killed in the course of military duty or while subject to a direct command relationship.  *Woodside v. United States*, 606 F.2d 134, 140 (6th Cir. 1979).  The Supreme Court in *Feres* disallowed two claims of medical malpractice asserted against military doctors, and courts have consistently applied the *Feres* doctrine in barring suits for the alleged negligent medical treatment of active service members at a military hospital.  *See Skees v. United States By and Through Dept. of Army*, 107 F.3d 421, 424 (6th Cir. 1997); *Sidley v. United States Dept. of Navy*, 861 F.2d 988 (6th Cir. 1988)(treatment of service member at naval hospital incident to military service); *Woodside*, 606 F.2d at 142 (injury to active duty service member while receiving treatment at military hospital or medical facility deemed to be incident to military service).

The *Feres* holding has also been extended to bar non-military third-party claims based on injuries sustained by service persons.  *See Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666 (1977)(claim asserted by third party seeking indemnity for damages paid to injured service member barred).

Courts have construed *Feres* as barring the derivative claims of family members of service persons where the claim has its "genesis" in an injury to an active duty  service person incident to military service.  Under the "genesis" test, if the non-serviceman's suit is based on essentially the same facts as the potential serviceman's suit or the non-serviceman's suit could not have happened "but for" the serviceman's cause of action, then the *Feres* doctrine precludes suit.  *Minns v. United States*, 155 F.3d 445, 449 (4th Cir. 1998).

Cases applying the "genesis" test include: *Minns*, 155 F.3d at 449-51 (claims of children of servicemen given investigational and defective drugs, causing children to be born with birth defects, properly dismissed because the exposure of servicemen to chemicals was the genesis of children's alleged contact with chemicals); *Skees*, 107 F.3d at 424-25 (claim of widow of serviceman who committed suicide due to allegedly negligent treatment at military hospital barred); *West v. United States*, 744 F.2d 1317 (7th Cir. 1984)(vacating opinion reported at 729 F.2d 1120 which held that there was a cause of action for health problems suffered by children due to parents' incompatible blood types where parents allegedly relied on negligent typing of father's blood at time of induction); *Hinkie v. United States*, 715 F.2d 96 (3d Cir. 1983)(barring claims of children born with birth defects caused by father's exposure to radiation); *Mondelli v. United States*, 711 F.2d 567 (3d Cir. 1983)(claim for child's cancer caused by father's exposure to radiation while on active duty barred); *Lombard v. United States*, 690 F.2d 215, 223-26 (D.C.Cir. 1982)(damage claim for genetic injuries to children allegedly caused by father's exposure to radiation while in the service barred); *Scales v. United States*, 685 F.2d 970 (5th Cir. 1982)(claim asserted on behalf of child for birth defects allegedly caused by rubella vaccination given to child's mother barred); *Laswell v. Brown*, 683 F.2d 261 (8th Cir. 1982)(claims of children for genetic injuries caused by father's exposure to

radiation barred); *Monaco v. United States*, 661 F.2d 129 (9th Cir. 1981)(claim of child for injuries caused by father's exposure to radiation barred).

In *Scales*, the Fifth Circuit addressed the viability of claims asserted on behalf of a child allegedly born with birth defects due to a rubella vaccination given to his service member mother during her pregnancy. The court distinguished cases which have permitted the dependents of servicemen to sue the government based on negligent conduct directed to the dependent alone which did not involve any decisions by the military toward enlisted personnel. *Scales*, 685 F.2d at 974. In contrast, the court noted, the allegations of negligence of the child in *Scales* focused entirely on the medical treatment that military physicians gave the mother. *Id.* The court stated:

> The treatment accorded his mother is inherently inseparable from the treatment accorded Charles as a fetus in his mother's body. Consequently, the district court's analysis is the same whether the suit is brought by Charles or Ms. Scales. In either instance, the judge is placed in the position of questioning the propriety of decisions or conduct of fellow members of the Armed Forces. This is precisely the type of examination that *Feres* seeks to avoid.

*Id.*

A minority of courts have adopted a position contrary to *Scales*. For example, in *Del Rio v. United States*, 833 F.2d 282 (11th Cir. 1987), the court held that a claim asserted on behalf of twin infants who were allegedly injured due to negligent prenatal care given to their service person mother was not precluded under *Feres*. In *Romero by Romero v. United States*, 954 F.2d 223, 225 (4th Cir. 1992), the court reversed the dismissal of claims brought on behalf of a child born prematurely with cerebral palsy due to the doctors' failure to implement a medical treatment plan made necessary by his service person mother's incompetent cervix, concluding that the genesis test only applied to civilian injuries derived from an actual injury to the service person.

In *Irvin v. United States*, 845 F.2d 126 (6th Cir. 1988), the Sixth Circuit considered the case of a service member who became pregnant while on active duty in the United States Army. The complaint alleged that the child died due to negligent prenatal medical care, including prescribing contraindicated medication during pregnancy. The *Irvin* court addressed whether the claim brought on behalf of the deceased infant by her parents was barred, and concluded that it was. The court "decline[d] appellants' invitation to reject the genesis test." *Id.* at 130. The *Irvin* court also relied on the above-quoted language from *Scales*, stating, "This is the position which we adopt today." *Id.* at 131. The court also noted the different approach taken by the court in *Del Rio* and declined to follow that reasoning. *Id.*

The decision in *Irvin* was subsequently followed in an unreported decision in *France v. United States*, 225 F.3d 658 (table), 2000 WL 1033020 (6th Cir. 2000). In *France*, a wrongful birth claim was asserted on behalf of an infant born with birth defects whose service member mother alleged that the failure to perform adequate ultrasound examinations deprived her of the opportunity to terminate her pregnancy. The *France* panel concluded that plaintiff's case was indistinguishable from *Irvin*, and affirmed the dismissal of plaintiff's claims. *Id.* at **3.

The claims in the instant case also fall within the scope of *Irvin*. Any prenatal treatment involving Melody Brown also involved her mother; in fact, at the time the treatment decision was made, Melody had not been conceived. *Irvin* involved negligence in prenatal care during pregnancy. This case involved the failure to prescribe prenatal vitamins both before and during the early stages of pregnancy. However, this distinction is not critical to the *Feres* analysis. If anything, the fact that the allegedly negligent treatment decision instructing Deborah Brown to stop taking prenatal vitamins was made prior to Melody Brown's conception makes the application of the *Feres* doctrine

even more compelling, because the decision at that point impacted only the physical condition of Deborah Brown, a service member. Once Melody was conceived, the treatment decision involved both Melody and her mother.

The majority states that *Irvin* is distinguishable because the alleged negligent treatment in this case caused no injury to the mother, and therefore, the "genesis" theory is inapplicable in this case. However, plaintiff's claim on behalf of Melody Brown depends on a showing that the decision to stop prescribing prenatal vitamins allegedly resulted in Deborah Brown being physiologically less capable of delivering a healthy child. Any woman wanting a healthy child would argue that a negligent medical decision impairing her ability to do so, resulting in the birth of a child with health problems, would constitute an actionable injury. If plaintiff's theory of liability is correct, the medical decision to cease prescribing prenatal vitamins had a significant impact on Deborah Brown's body chemistry by depriving her body of the nutrients needed to create a healthy baby, allegedly resulting in injury to Melody. This situation is analogous to the cases cited above involving servicemen who suffered chromosomal damage due to exposure to radiation, thereby impairing their ability to father healthy children. If the medical decision to stop prenatal vitamins was negligent, then Deborah Brown suffered an injury which was also the "genesis" of the injury to her child, and the alleged injury to Melody Brown was derivative of the alleged injury caused to Deborah Brown.

Even if it is assumed that no injury occurred to Deborah Brown, neither that fact nor the fact that no claim of injury has been asserted by Deborah Brown alters the *Feres* analysis. The plaintiffs in *Minns* also argued that their claims were not barred because they only alleged an injury themselves, not to the parent service member. The court found that the omission of this allegation was not critical to the *Feres* analysis, stating:

> We conclude that the plaintiffs cannot escape the fact that the negligent acts alleged in their complaint find their basis in the military's decision to inoculate its soldiers with drugs and to expose them to pesticides, and the issue of whether they can allege or demonstrate injury is irrelevant to the analysis. *See e.g.*, *Monaco*, 661 F.2d at 134 (holding that the fact that a plaintiff may seek relief from injury not based on the injury of the serviceman "does not change the substantive analysis [because] the court must still examine the Government's activity in relation to military personnel on active duty").... Because the servicemen's exposure to the chemicals is the genesis of the plaintiffs' alleged contact with the chemicals, *Feres* bars the claims.

*Minns*, 155 F.3d at 450. Similarly, there was no indication in *West* that the serviceman father was injured in any way due to the negligent recording of his blood type, yet the Ninth Circuit vacated its prior opinion recognizing the right of the serviceman's children to assert claims based on the erroneous blood typing. *West*, 744 F.2d at 1317.

The majority seeks to discredit *Irvin* by noting the post-*Scales* opinion of the Fifth Circuit in *Dickerson ex rel. Dickerson v. United States*, 280 F.3d 470 (5th Cir. 2002). However, the *Feres* doctrine was not at issue in *Dickerson*, because the government in that case did not contest liability. *Id.* at 474. Neither *Feres* nor *Scales* was cited in the opinion. In addition, *Dickerson* involved claims alleging negligence in the actual delivery of the infant plaintiff, including the failure to perform a caesarean section which resulted in brain damage, not negligence in prenatal treatment, and thus it is distinguishable from *Scales* on its facts.

The majority also reasons that the three rationales underlying the *Feres* doctrine do not apply in this case, those being: (1) the distinctly federal character of the relationship between the government and members of the armed forces; (2) the existence of generous statutory disability and death benefits provided to service members; and (3) the fact that claims for injuries incurred incident

to military service would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness. *United States v. Johnson*, 481 U.S. 681, 688-691 (1987). However, the defining standard under *Feres* has always been whether the injury arose out of or occurred in the course of activity incident to service. *See id*. at 686 ("In *Feres*, this Court held that service members cannot bring tort suits against the Government for injuries that 'arise out of or are in the course of activity incident to service.' [*Feres*,] 340 U.S., at 146. This Court has never deviated from this characterization of the *Feres* bar.")(footnote omitted). Although *Johnson* included a general discussion of the three rationales, the Court referred solely to the fact that the alleged injury arose directly out of and was incident to military service in analyzing claim at issue in that case. *Id*. at 688-91.

In *United States v. Stanley*, 483 U.S. 669 (1987), the Supreme Court did not mention the first two factors, and specifically rejected a "special factors" analysis which would consider how military discipline would actually be affected in a particular case, stating that it would be appropriate to disallow actions "whenever the injury arises out of activity 'incident to service.'" *Id*. at 681. This led the Tenth Circuit to conclude that "*Stanley* thus effectively merged the 'special factors' analysis with the incident to service test." *Ricks v. Nickels*, 295 F.3d 1124, 1130 (10th Cir. 2002).

In *Minns*, the plaintiffs argued that two of the underlying rationales for the *Feres* doctrine did not apply to them, because the children of servicemen did not have a distinctively federal relationship to government or an effective remedy for their claims. The Fourth Circuit nonetheless concluded that because the children's claims were derivative of the military's alleged negligent acts directed at its servicemen, their claims were barred by the genesis test because "their suits would require the judiciary to enmesh itself deeply into military decisions, a consequence that implicates the primary justification for the *Feres* doctrine." *Minns*, 155 F.3d at 450-51. Similarly, in *Scales*, the Fifth Circuit addressed the question of whether a suit filed on behalf of the service person's child would have the same disruptive effect on military discipline as a suit brought by his service person mother. The court concluded, "If the court must second-guess the judgment of military officers in assessing their treatment of a member of the armed services, the claim will be deemed to have a disruptive effect on discipline and will be dismissed." *Scales*, 685 F.2d at 973.

The record in this case is silent as to why the military physician instructed Deborah Brown to stop taking prenatal vitamins. Any inquiry as to why this decision was made would necessarily involve the district court in questioning the decision of a military doctor in the treatment of an active service member, implicating the third *Feres* factor. This is sufficient to invoke the *Feres* bar.

Regardless of whether this panel agrees or disagrees with the reasoning in *Irvin*, the genesis test adopted in *Irvin* remains the law in this circuit. This court has long adhered to the "venerable principle" that a prior published decision remains controlling unless overturned by an inconsistent decision of the United States Supreme Court or by this court itself sitting *en banc*. *Schoenberger v. Russell*, 290 F.3d 831, 841 (6th Cir. 2002); *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996); 6 Cir. R. 206(c). The facts of the instant case fall within the scope of the holding in *Irvin*, and that holding mandates the dismissal of plaintiff's claims. I would affirm the judgment of the district court dismissing the complaint for lack of subject matter jurisdiction.