# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3743

MICHAEL PURCELL, individually and as
the Personal Representative of the Estate
of CHRISTOPHER LEE PURCELL, deceased,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-06137—**Joan Humphrey Lefkow**, *Judge.*

ARGUED MAY 12, 2011—DECIDED AUGUST 23, 2011

Before BAUER, FLAUM, and EVANS[*], *Circuit Judges.*

---

[*] Circuit Judge Evans died on August 10, 2011, and did not
participate in the decision of this case, which is being resolved
by a quorum of the panel under 28 U.S.C. § 46(d).

FLAUM, *Circuit Judge*. Christopher Lee Purcell ("Purcell") committed suicide in his barracks at the Brunswick Naval Air Station, where he was serving on active duty in the Navy. Navy and Department of Defense ("DOD") personnel were called to the scene after being informed that Purcell planned to kill himself. They arrived at his residence before he attempted suicide, but did not find the gun they were told he had. Later, they permitted Purcell to go to the bathroom accompanied by his friend. Upon entering, he pulled a gun from his waistband and committed suicide by shooting himself in the chest.

After attempting unsuccessfully to recover for Purcell's death from the Navy through administrative procedures, his family sought relief in federal court on a wrongful death claim under the Federal Tort Claims Act ("FTCA"). The district court found the case barred by the *Feres* doctrine, which provides that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146 (1950). We affirm.

## I. Background

Purcell was twenty-one years old and working on active duty in the Navy as a hospital corpsman at the Brunswick Naval Air Station when he committed suicide. The brief submitted by Purcell's father, Michael Purcell, notes that shortly after enlisting, at the age of eighteen, Purcell began experiencing social and emotional problems. It also mentions that the Navy intervened on

several occasions by providing substance abuse treatment and mental health care.

On January 27, 2008, someone contacted the base at around 8:30 PM to inform them that Purcell had a gun in his room and was threatening suicide. In response to the call, Junior Corpsman Stephen Lollis told base security that Purcell had a gun and was about to kill himself, and provided Purcell's address. DOD Police Officers Shawn Goding and Matthew Newcomb were the among the first local law enforcement officers to arrive at Purcell's apartment, followed by DOD Patrolman Francis Harrigan and Petty Officer First Class David Rodriguez. Each was aware that Purcell had a gun and was suicidal.

Purcell was alive when the investigating officers arrived at his on-base residence. They searched his residence and found evidence indicating that he had a firearm, including an empty gun case and bullets on top of a television stand, but they did not find a weapon, and they never searched Purcell's person.

Rodriguez spoke to Purcell and suggested they go outside to talk. Purcell responded calmly. Outside, Petty Officer First Class Mitchell Tafel approached Rodriguez and stated that they needed to get Purcell into custody to protect him and local law enforcement. Purcell became irate and non-compliant when told he would have to be put in restraints. A struggle with Rodriguez, Tafel, Harrigan, Goding, and Thomas Robinson, also with DOD, ensued. The five eventually subdued Purcell, handcuffed him, and escorted him back to his room.

Once upstairs, Tafel permitted Purcell to use the bathroom and instructed Robinson to remove one of Purcell's handcuffs. Purcell went to the bathroom accompanied by his friend, Nathan Mutschler. After entering the bathroom, Purcell pulled his gun from his waistband and committed suicide by shooting himself in the chest.

In his brief, Michael Purcell notes that Tafel and Rodriguez faced courts-martial for violating a general order, reckless endangerment, and dereliction of duty for failing to properly search and supervise Purcell. He claims that they were punished via an extrajudicial proceeding.

Purcell's estate filed an administrate tort claim with the Navy seeking $45 million in damages. The Navy denied the claim based on *Feres*. Michael Purcell's brief claims that the Purcell family has not received any benefits from the military for Purcell's suicide.

Michael Purcell, individually and as a personal representative of Purcell's estate, then brought a wrongful death action against the United States under the FTCA, 28 U.S.C. §§ 1346(b), 2671-2680, in federal district court based on the conduct of the officers sent to help Purcell. The complaint alleges that the United States failed to calm Purcell, to search him in accordance with Navy regulations, to maintain proper custody of him after removing his handcuffs, and to transport him to the Brunswick Naval Air Station security precinct in accordance with the Air Station's standard operating procedures. It also claims that the responding officers irritated Purcell with profane, derogatory, and threat-

ening comments that were contrary to standard operating procedures. The district court dismissed the case for lack of subject matter jurisdiction based on the *Feres* doctrine.

## II. Discussion

Michael Purcell contends that the district court erred by dismissing his case based on *Feres*. We treat dismissal under *Feres* as a dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Smith v. United States*, 196 F.3d 774, 776 n.1 (7th Cir. 1999). Whether subject matter jurisdiction exists under the FTCA is a question of law that we review de novo. *Jones v. United States*, 112 F.3d 299, 301 (7th Cir. 1997).

The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Excepted from this waiver of sovereign immunity, however, are claims "arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). In *Feres v. United States*, 340 U.S. 135 (1950), the Supreme Court further held that "the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146.

The *Feres* doctrine, while currently viable, is certainly not without controversy. It has been interpreted increas-

ingly broadly over time, *see Persons v. United States*, 925 F.2d 292, 295 (9th Cir. 1991); *Major v. United States*, 835 F.2d 641, 644-45 (6th Cir. 1987), and has also been widely criticized, *see, e.g.*, *Selbe v. United States*, 130 F.3d 1265, 1266 (7th Cir. 1997) (citing opinions and academic commentary criticizing the *Feres* doctrine); *Taber v. Maine*, 67 F.3d 1029, 1032, 1038 (2d Cir. 1995) (writing that "the *Feres* doctrine has gone off in so many different directions that it is difficult to know precisely what the doctrine means today," and characterizing it as "an extremely confused and confusing area of law"); *Estate of McAllister v. United States*, 942 F.2d 1473, 1475-77 (9th Cir. 1991) (discussing and citing to critiques of the *Feres* doctrine). In *United States v. Johnson*, 481 U.S. 681 (1987), in a dissent signed by three other Justices, Justice Scalia wrote that "*Feres* was wrongly decided and heartily deserves the widespread, almost universal criticism it has received." *Id.* at 700 (Scalia, J., dissenting, joined by Brennan, Marshall, and Stevens, JJ.). But the majority in *Johnson* reaffirmed *Feres*, *id.* at 692, and the Court has not squarely addressed the doctrine since then. *Feres* thus remains the law until Congress or the Supreme Court decides otherwise. *See Selbe*, 130 F.3d at 1266.

When the Court reaffirmed *Feres*, it discussed three rationales that support the doctrine: "(1) the need to protect the distinctively federal relationship between the government and the armed forces, which could be adversely affected by applying differing tort laws; (2) the existence of statutory compensatory schemes; and (3) the need to avoid interference with military discipline and effectiveness." *Jones*, 112 F.3d at 301 (construing *Johnson*,

481 U.S. at 688-91). The Court has also explained that "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases." *United States v. Shearer*, 473 U.S. 52, 57 (1985). "'The dispositive inquiry [is] whether the service-member stand[s] in the type of relationship to the military at the time of his or her injury that the occurrences causing the injury arose out of activity incident to military service.'" *Smith*, 196 F.3d at 777 (quoting *Stephenson v. Stone*, 21 F.3d 159, 162 (7th Cir. 1994)); *see also Jones*, 112 F.3d at 301 (same).

Applying that test, we conclude that the district court correctly dismissed Michael Purcell's suit based on *Feres.* At the time he committed suicide, which occurred in his on-base residential building, Purcell was on active duty; living in the barracks on a military base, experiencing, according to Michael Purcell, various social and emotional problems that developed shortly after he enlisted; and deliberately avoiding Navy and DOD personnel sent to Purcell's barracks to help him, whom Michael Purcell claims failed to follow their own military regulations, and some of whom, he explains, faced courts-martial and were punished via an extrajudicial proceeding for failing to adequately search and supervise Purcell. *See Skees v. United States*, 107 F.3d 421, 424 (6th Cir. 1997) (*Feres* barred claim that members of serviceman's chain of command negligently supervised him because they "knew of [his] alcohol problems, but failed to follow their own regulations which required them to address and treat [the decedent's]

problems" after he communicated his intent to kill him-self); *Persons*, 925 F.2d at 294-96 (*Feres* barred medical malpractice claim involving a decedent who came to a military hospital with slash marks on his wrists and attested to his attempted suicide, was released after a few hours without being admitted for observation, and committed suicide three months later); *Stubbs v. United States*, 744 F.2d 58 (8th Cir. 1984) (*Feres* barred suit for wrongful death based on a servicewoman's suicide after she was accosted by a drill sergeant and refused his sexual advances); *see also Shearer*, 473 U.S. at 58-59 (holding that a suit alleging that the government inade-quately supervised and disciplined a serviceman was barred by *Feres* because it went "directly to the manage-ment of the military; it call[ed] into question basic choices about the discipline, supervision, and control of a serviceman" (internal quotation marks and citations omitted)); *Feres*, 340 U.S. at 136-37 (tort suit barred where executrix of a serviceman sought to recover for service-man's death allegedly caused by negligence where dece-dent died in a fire while on active duty and quartered in military barracks near a defective heating plant); *Selbe*, 130 F.3d at 1267 (considering as "a factor tending to show that her suit is barred" that the servicewoman's "original injury occurred while she was on active duty and she had not been discharged when the subsequent injury occurred"); *Stephenson*, 21 F.3d at 164 (considering as factors that "Stephenson's death occurred while he was an active duty member of the Army and subject to military discipline, orders, and control," and that "his death occurred on military property and in the barracks

to which he was assigned"). Together, these facts demonstrate that Purcell stood "in the type of relationship to the military at the time of his . . . injury that the occurrences causing the injury arose out of activity incident to military service," and thus that *Feres* bars his suit. *Stephenson*, 21 F.3d at 162. We limit our holding to the facts of this case.

Michael Purcell's counsel ably, although ultimately unpersuasively, opposes applying *Feres*. Primarily, he argues that Purcell's death had nothing to do with his military status, and that the military connections to the case are irrelevant because Purcell was effectively acting as and treated like a civilian during the relevant events. *See Brooks v. United States*, 337 U.S. 49, 52 (1949); *Jones*, 112 F.3d at 302 (noting that "where suits have been allowed to proceed, the military personnel involved were not taking advantage of any military program or status, but simply engaging in activities on the same grounds as civilians"). We disagree. As explained above, *Feres* is read broadly, and Michael Purcell cannot avoid its reach on the facts of this case. Michael Purcell also points out that neither Purcell nor his estate have received benefits related to his suicide. But that alone does not warrant reversal in this case. *See Maas v. United States*, 94 F.3d 291, 295 (7th Cir. 1996) ("[T]his and other courts have applied *Feres* to bar claims that are incident to service even if a serviceman is not entitled to military benefits relating to those claims.").

### III. Conclusion

Like many courts and commentators, we recognize the challenges presented by the *Feres* doctrine. In light of its enormous breadth, however, we AFFIRM the judgment of the district court.